UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER G.,

        Plaintiff,                **DECISION AND ORDER**

   v.                                       1:19-CV-388-EAW

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

# **INTRODUCTION**

Represented by counsel, Plaintiff Christopher G. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 15). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 9) is denied.

**BACKGROUND**

Plaintiff protectively filed his applications for DIB and SSI on May 8, 2015 and May 11, 2015 respectively. (Dkt. 8 at 153-61).[1] In his applications, Plaintiff alleged disability beginning January 1, 2014. (*Id.* at 153, 155). Plaintiff's applications were initially denied on August 3, 2015. (*Id.* at 77-96). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird on November 21, 2017. (*Id.* at 33-74). On May 1, 2018, the ALJ issued an unfavorable decision. (*Id.* at 15-28). Plaintiff requested Appeals Council review; his request was denied on February 26, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 1-5).

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b).[2] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

---

[2]    Because the DIB and SSI regulations mirror each other, the Court only cites the SSI regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 1, 2014, the alleged onset date. (Dkt. 8 at 17).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: imperforate anus with permanent colostomy, chronic obstructive pulmonary disease, congenial lumbar vertebrae wedging, scoliosis, lumbar stenosis, status post laminectomy, and missing kidney. (*Id.*). The ALJ further found that Plaintiff did not have a medically determinable mental impairment, and that his past seizure condition, hyperlipidemia, vitamin D deficiency, and rhinitis were not severe impairments. (*Id*. at 18).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 19). The ALJ particularly considered the criteria of Listings 1.03, 1.04, 3.02, 5.06, 5.07, and 6.09 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to:

> lift and/or carry 10 pounds occasionally, and up to 10 pounds frequently; sit up to 6-hours in an 8-hour workday; and stand or walk for 4-hours in an 8-hour workday. The claimant is limited to occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, and crouching, and no crawling. He can never be exposed to excessive cold, heat, moisture/humidity, or excessive vibration. He can have no concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gases[,] or poor ventilation. He can never be exposed to hazards such as unprotected heights or moving machinery; and is limited to work allowing him to be off task 5% of the workday, in addition to regularly scheduled breaks.

(*Id*. at 19). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 25-26).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the occupations of optical polisher, charge account clerk, and callout operator. (*Id.* at 27). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 27-28).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff argues that the ALJ failed to properly evaluate objective medical evidence and consider his hearing testimony about the effect of the degenerative disc disease, colostomy, and asthma on his employability, and, as such, arrived at the RFC that was not supported by substantial evidence. (Dkt. 9-1 at 4-5). For the reasons that follow, the Court finds Plaintiff's arguments to be without merit.

The regulations provide that it is the ALJ who is tasked with making an RFC determination based on a review of the entire record. *See* 20 C.F.R. § 416.927(d)(2). That is why, when reviewing the Commissioner's disability determination, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted).

Here, Plaintiff does not object to the ALJ's evaluation of the medical evidence of record, and, instead, argues that the ALJ did not account for the 2017 statement from his neurosurgeon, Dr. Lewis, that Plaintiff could not work when the ALJ limited him to

sedentary work. (Dkt. 9-1 at 4). However, while Plaintiff may disagree with the ALJ's conclusions, the Court must defer to the ALJ's findings made based on his review of the evidence as long as they are supported by the record. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)). The Court finds that remand is not warranted because the ALJ's RFC determination is supported by the record.

Contrary to Plaintiff's argument, the ALJ did not ignore or mischaracterize his back impairment. Rather, the ALJ properly considered it when he found Plaintiff's congenial lumbar vertebrae wedging, scoliosis, and lumbar stenosis to be severe impairments in step two of the sequential analysis. (Dkt. 8 at 17). In subsequent steps, the ALJ thoroughly evaluated the extensive record of Plaintiff's treatment for back pain during the alleged period of disability, as well as Plaintiff's colostomy and asthma, to essentially limit him to a sedentary job with additional limitations despite the opinions of his treatment providers, which would limit him to light work.[3] (*Id.* at 20-25).

---

[3]     The regulations provide that "sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a). Even though the ALJ did not specifically indicate that Plaintiff was restricted to sedentary work in his RFC (*id*. at 19), he discussed limiting Plaintiff to sedentary work in the other parts of his decision (*id*. at 24-25). The Court agrees that the limitations identified by the ALJ, particularly those related to Plaintiff's ability to lift and carry 10 pounds occasionally and up to 10 pounds frequently, sit for six hours, and

In arriving at Plaintiff's RFC, the ALJ primarily relied on the opinions of Plaintiff's treating physician Dr. Eggleston, and consultative examiner Dr. Balderman, whose opinions he afforded great weight. (*Id*. at 24). The ALJ's reliance on both physicians' opinions was proper as their findings were fully supported by their treatment or examination records, and they are consistent with the other medical evidence contained in the record. Specifically, Dr. Eggleston issued opinions in November 2015 and November 2017, in which he identified Plaintiff's physical limitations stemming from his chronic back pain with sciatica, spinal stenosis, kyphoscoliosis, colostomy, and asthma. (*Id*. at 331-33, 440-42). In both opinions, Dr. Eggleston indicated that because of Plaintiff's kyphoscoliosis with congenial deformity involving his lumbar spine and degenerative disc disease, Plaintiff was limited to lifting 20 to 25 pounds, standing and sitting for four hours, and alternating between standing and sitting at least every hour. (*Id*.). Dr. Eggleston opined that Plaintiff could only occasionally climb, stoop, and kneel, could never crouch, or crawl, and that due to his back pain he was limited in moving, bending, climbing, pushing, and pulling. (*Id*. at 332-32, 441). Dr. Eggleston ultimately opined that Plaintiff was capable of performing light work without manual labor lifting no more than 25 pounds.[4] (*Id*. at 293).

Dr. Eggleston's opinions were consistent with his treatment records that documented Plaintiff's ongoing struggle with back pain with frequent sciatica despite

---

stand/walk for four hours, are consistent with the sedentary level of exertion established by the regulations.

[4]    The regulations identify light work as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b).

having undergone a back surgery, epidural injections, and physical therapy. (*Id*. at 276-77, 279, 282, 284, 286, 292-93, 296, 319, 325, 331, 424, 440).   Even though Dr. Eggleston continued to diagnose Plaintiff with lumbar spondylitis, congenial kyphoscoliosis, and congenital anomalies of his lumbar spine, and at times observed Plaintiff having decreased flexibility in his lower back, his records demonstrated that Plaintiff was well-developed, not in acute distress, had normal gait and posture during examinations, and responded well to medications.  (*Id*. at 274-75, 277, 279, 281, 286, 292-93, 295).

The ALJ also properly relied on the opinion of consultative examiner Dr. Balderman, who observed Plaintiff's essentially non-remarkable examination and Plaintiff having normal gait and posture, requiring no help changing or getting on and off the examination table, and having full flexion and extension in his cervical and lumbar spine with full lateral extension and rotary movement. (*Id*. at 310-11).  Even though Dr. Balderman documented mild scoliosis and kyphosis in Plaintiff's thoracic spine, Plaintiff had full range of motion in his upper and lower extremities, nontender joints, and a negative single leg raise test. (*Id*.).  Upon the examination, Dr. Balderman ultimately diagnosed Plaintiff with scoliosis, permanent colostomy for imperforate anus, and asthma, noted that his prognosis was stable, and opined that Plaintiff had moderate limitations in repetitive bending and lifting due to the lumbar spine pain and the presence of a permanent colostomy. (*Id*. at 311-12).

Plaintiff argues that the RFC determination was also flawed because the ALJ failed to consider his testimony regarding the frequent need to change his colostomy bag when the bag leaked unexpectedly, requiring Plaintiff to spend at least half an hour on clean up.

(Dkt. 9-1 at 5). Plaintiff's argument is unavailing because a claimant's statements alone are insufficient to establish disability, unless they are supported by objective medical evidence. *Genier*, 606 F.3d at 49 ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." (internal citations omitted)).

In fact, in assessing claimant's subjective complaints, the regulations require an ALJ to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" his symptoms. *Id.* (internal citations omitted). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.* Here, the ALJ applied the two-step inquiry and determined that Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of his symptoms were only partially consistent with his daily activities, such as shopping, doing basic household chores, going for walks of about half-a-mile, as well as Plaintiff's work history and treatment received for the colostomy. (Dkt. 8 at 21). *See, e.g.*, *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (the ALJ properly did not credit plaintiff's subjective complaints of limiting effects of his impairments when his testimony was not supported by the objective medical evidence and

daily activities); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980) (plaintiff's ability to cook, shop, wash, and sew supported the ALJ's determination that she could perform sedentary work despite pain). Specifically, in his decision, the ALJ recognized Plaintiff's testimony about his birth defects that resulted in him having one kidney and imperforate anus, which necessitated the use of a colostomy bag since birth. (*Id*. at 20-24). The ALJ also acknowledged and discussed treatment records of Plaintiff's treating sources, none of whom identified any additional limitations stemming from Plaintiff's permanent colostomy other than those identified by the ALJ in his RFC. (*Id*.) For instance, even though the record contains a 2014 treatment note from Dr. Eggleston indicating that leakage of Plaintiff's colostomy bag required him to see a colostomy specialist, Dr. Eggleston's subsequent records indicated that Plaintiff had no issues with his colostomy bag. (*Id*. at 279, 283). Moreover, Plaintiff's testimony about the leakage of his colostomy bag that occurred three to four times per week (*id*. at 53) was unsupported by Dr. Eggleston's treatment records, which neither documented Plaintiff's persistent complaints of frequent and unexpected leakage of his colostomy bag nor identified any limitations in Plaintiff's functioning associated with the need to frequently change his colostomy bag, *see Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."). Additionally, in determining the impact of Plaintiff's colostomy on his employability, the ALJ properly found Plaintiff's hearing testimony to be inconsistent with his prior employment at substantial gainful activity level for many years despite having colostomy since birth. Notably, even though the record does not contain any evidence suggesting that

the leakage of Plaintiff's colostomy bag would cause any substantial limitations in his functioning, the ALJ credited Plaintiff's testimony and afforded him the benefit of the doubt when he included a 5% off-task limitation and regular breaks in his RFC. *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (the ALJ crediting Plaintiff's testimony and assessing more generous off-task limitation was not a ground for remand).

The Court also finds Plaintiff's unsubstantiated argument that the combination of his impairments, including asthma, would cause him to miss more than two days per month to be without merit. (Dkt. 9-1 at 5). Even though all of Plaintiff's treatment providers diagnosed him with uncomplicated asthma and noted an occasional flare up of his symptoms due to the weather changes, none of them, with the exception of Dr. Eggleston, opined that Plaintiff's asthma would cause any limitations. In fact, all of them found Plaintiff's asthma to be stable and well-controlled by medication. (Dkt. 8 at 275, 279, 287, 292-93, 295, 309, 311, 325, 328, 365, 369, 376-77, 383-84, 386, 430); *see Ewing v. Astrue*, No. 5:11-cv-01418, 2013 WL 1213129, at *9 (N.D.N.Y. Mar. 22, 2013) (plaintiff's history of asthma "was not equivalent to evidence of active treatment for asthma" because "evidence of the presence of an impairment, and even evidence of treatment for such an impairment, is not in itself sufficient to show that the impairment limited a claimant's ability to perform work activities"). Dr. Eggleston is the only treating source of record who identified any limitation stemming from Plaintiff's asthma when he opined that Plaintiff's exposure to dust and fumes should be limited. (*Id*. at 442). Despite that, the ALJ provided a more restrictive RFC in which he limited Plaintiff's exposure to all

pulmonary irritants, such as odors, fumes, dusts, gases, and poor ventilation, as well as excessive cold, heat, moisture, and humidity.

In sum, because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet his burden to demonstrate that he had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC). For the reasons stated above, the Court finds that the RFC determination was supported by substantial evidence. Accordingly, there is no basis for remand or reversal.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   July 30, 2021
         Rochester, New York